EDITH S. FAIRBANKS, ADMINISTRATRIX (ESTATE OF
BETTY L. BALDWIN) *v.* STATE OF
CONNECTICUT ET AL.

BALDWIN, O'SULLIVAN, WYNNE, DALY and COMLEY, Js.

Argued June 15—decided July 24, 1956

*Allyn L. Brown, Jr.,* with whom, on the brief, was *Robert M. Sussler,* for the appellant (defendant Baldwin).

*J. Rodney Smith,* with whom was *John C. Dennis,* for the appellants (named defendant et al.).

*Milton L. Jacobson,* with whom, on the brief, were *George Gilman* and *Vincent A. Laudone,* for the appellee (plaintiff).

COMLEY, J. The plaintiff, administratrix of the estate of Betty L. Baldwin, brought this action to recover damages for the death of her decedent which resulted from injuries sustained by her while riding as a passenger in a car operated by her husband, the defendant Wallace R. Baldwin, Jr. About 11 p.m. on July 30, 1954, at the intersection of routes 87 and 207 in the town of Lebanon, the Baldwin car collided with a car driven by the defendant Arthur R. Harvey and owned by the state police department, in which Harvey was employed as a police officer. At the

time of the accident, he was answering an emergency call in the line of duty. The state of Connecticut was made a party by virtue of General Statutes, § 8297.

The jury returned a verdict for $75,000 against all three defendants, and the trial court refused to set it aside. The defendant Baldwin has appealed, assigning as error the failure of the court to charge as requested, the exclusion of certain evidence, and the denial of the motion to set aside the verdict as excessive. The state and Officer Harvey have appealed on the sole ground that the verdict is excessive.

In connection with his claim that the court erred in refusing to charge as requested, the defendant Baldwin asks that certain paragraphs of the finding be corrected. It has recently been pointed out that in a jury case "[i]t serves no useful purpose to seek corrections in the finding which would not make clearer the situation as related to the claimed errors." *Trani* v. *Anchor Hocking Glass Corporation,* 142 Conn. 541, 543, 116 A.2d 167; *Voronelis* v. *White Line Bus Corporation,* 123 Conn. 25, 27, 192 A. 265. Corrections will not be made "merely to secure a meticulous accuracy as to details." *Delfino* v. *Warners Motor Express,* 142 Conn. 301, 302, 114 A.2d 205. The changes sought in the present case are denied.

The defendant Baldwin requested the court to charge as follows: "If you the jury find both, defendant Harvey and defendant Baldwin, negligent then in order to establish liability of both defendant[s] you must find that the negligence of each was the substantial factor in causing the collision and continued to be [until] the point of impact. If the negligence of either defendant is questioned by you the jury as becoming a trivial consequence a mere

incident of the operating cause although it may be in a sense a factor, the law holds it so insignificant that it cannot be considered a cause and that defendant is no longer to be held liable." The trial court charged the jury at length upon the subject of proximate cause, adopting the familiar "substantial factor" test as set forth in *Mahoney* v. *Beatman,* 110 Conn. 184, 195, 147 A. 762, and emphasizing that "to be a substantial factor, the negligence must have continued down to the moment of the injury or at least down to the setting in motion of the final active injurious force, which materially produced or preceded the injuries." This was a sufficient compliance with the request to charge, in view of the fact that the proof offered by all the parties, including the defendant Baldwin, disclosed a collision between two vehicles within an intersection into which each operator had driven without any substantial alteration in his course or speed. It was a typical case of concurrent negligence continuing without interruption down to the time of the accident and did not involve any act of superseding or intervening negligence such as existed in the cases of *Kinderavich* v. *Palmer,* 127 Conn. 85, 15 A.2d 83, and *Corey* v. *Phillips,* 126 Conn. 246, 10 A.2d 370, where a charge such as the one requested was held to be essential.

The ruling on evidence which is assigned as error by the defendant Baldwin arose out of his attempt to show bias or prejudice on the part of a state police officer named Powers who investigated the accident on the night of its occurrence and testified as a witness for the plaintiff. Later in the trial, the plaintiff called a witness named Zelinsky who was at the scene of the accident and overheard a conversation between Powers and the defendant Harvey. Upon cross-examination by Baldwin's

counsel, Zelinsky was permitted to testify to the statements made by Harvey in this conversation but not to those made by Powers. Baldwin's counsel then stated that he had expected to show by this excluded testimony that Powers had said to Harvey that the latter "should not be sorry" about the accident and that he, Powers, "would see that everything turned out all right."

The bias and prejudice of a witness may be shown, either by cross-examination or by the testimony of other witnesses. *Fordiani's Petition,* 99 Conn. 551, 560, 561, 121 A. 796; *Beardsley* v. *Wildman,* 41 Conn. 515, 517. It is, however, the rule in many jurisdictions that if the bias or prejudice of a witness is to be shown by statements made out of court to, or in the presence of, another witness, a foundation must first be laid by asking the first witness, on cross-examination, whether or not he made such statements. 3 Wigmore, Evidence (3d Ed.) §§ 953, 1028; 58 Am. Jur. 385, § 714; note, 16 A.L.R. 984. This rule has not been applied in this state with inflexible rigidity, as it has in many jurisdictions. From early times it has been consistently held that it rests within the judicial discretion of the trial court whether or not to admit the impeaching statements where no foundation has been laid. *Hedge* v. *Clapp,* 22 Conn. 262, 269; *McGinnis* v. *Grant,* 42 Conn. 77, 79; *Tomlinson* v. *Derby,* 43 Conn. 562, 565; *Adams* v. *Herald Publishing Co.,* 82 Conn. 448, 452, 74 A. 755; *Marshall* v. *Fenton,* 107 Conn. 728, 733, 142 A. 403. It cannot be said that the court abused its discretion in excluding the statements offered to show bias or prejudice on the part of Powers.

The defendant Baldwin also claims that since the state is a party defendant and since Officer Powers was the agent of the state in making the investigation

of the accident, his statement to Harvey in the presence of Zelinsky should have been admitted against the state as an admission by its agent acting within the scope of his authority. This claim cannot be sustained. Powers, it is true, was the agent of the state for the purpose of making the investigation, but not for the purpose of making the statements attributed to him. They were not within his express or implied authority. *Wade* v. *Yale University,* 129 Conn. 615, 618, 30 A.2d 545; *Ezzo* v. *Geremiah,* 107 Conn. 670, 680, 142 A. 461; *Morse* v. *Consolidated Ry. Co.,* 81 Conn. 395, 399, 71 A. 553.

The remaining assignment of error, pressed by all the defendants, is that the verdict for $75,000 is so excessive that the court erred in refusing to set it aside. This is an action for wrongful death brought under the provisions of § 3230d of the 1955 Cumulative Supplement, which was in force at the time of the accident. That statute provides for the recovery of "just damages," with no maximum limit. In *Chase* v. *Fitzgerald,* 132 Conn. 461, 45 A.2d 789, this court reviewed the subject and, with some modification and revision of the rulings made in earlier cases, restated and redefined the several components which may properly enter into the ascertainment of "just damages." These principles have been affirmed in the recent cases of *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 77, 111 A.2d 547, and *McKirdy* v. *Cascio,* 142 Conn. 80, 83, 111 A.2d 555, and, in the latter case, it was pointed out (p. 84) that "any change in the law is presently unwarranted, at least by judicial decision." Since no exception was taken by any of the defendants to the court's charge on the subject of damages, it must be assumed that it was an accurate and adequate statement of the law. *Lengel* v. *New Haven Gas Light Co.,* supra.

It is unnecessary for us to repeat the familiar elements of permissible damages in death cases as laid down in *Chase* v. *Fitzgerald,* supra, 466 et seq. Suffice it to say that, except for the special expenses allowable under the statute, all these elements are, of necessity, imponderable and largely speculative. No one can place a definite value upon them, nor can one do more than conjecture as to what the future course of any life, if continued, would have been. At best, the trier must take the evidence and make an intelligent estimate.

The evidence before the jury in the present case may be summarized as follows: Mrs. Baldwin was about twenty-nine years old at the time of her death on August 3, 1954, and had a life expectancy of 40.55 years. After graduating from the Norwich Academy, she attended Boston University and the Boston School of Physiotherapy. For one year after completing her course at the latter institution, she held a position in a hospital in Scranton, Pennsylvania, practicing and teaching physiotherapy. On May 30, 1945, she married Baldwin, and at the time of her death they had three sons, aged one, five and seven years. She enjoyed good health and lived a full and happy home life with her family, to whom she was devoted. She liked to fish and hike with her husband. She had a jolly disposition and many friends, among whom she was very popular. She had studied music for seven years and could play both the piano and the organ. She and her husband owned jointly a house in Preston. She was active in the affairs of her church, of the Grange and of the Parent-Teacher Association, having been elected treasurer of the latter organization. She was interested in gardening and cultivated a large strawberry bed, from which she sold several hundred

quarts of berries each year. She had informed her family and friends that as soon as the two older boys were in school she planned to place the youngest child in the care of her sister during working hours and resume the practice of physiotherapy. In pursuance of this plan, she had taken steps to obtain from the proper authorities in Hartford permission to take the state examinations. The salary range for physiotherapists in this state is from $3500 to $4900 per year, and their services are in great demand.

She was injured on the evening of July 30, 1954, and was taken to the Windham Community Memorial Hospital. She was then close to death, owing to a punctured lung which had been badly torn by a fractured rib. Between that time and her death on August 3, 1954, she had great difficulty in breathing, she was swollen because of the escape of air and blood into the chest cavity, her heart was displaced toward the right side of her chest, and she required drugs every three hours to relieve her pain. It is a reasonable inference that she suffered mental anguish because of the apprehension of death.

In a careful and well-considered memorandum of decision denying the motion to set aside the verdict, the trial judge noted that "[i]t is difficult to imagine a case in which a jury would be called upon to assess damages for the death of a married woman where the factual situation presented a more complete basis for a very substantial award." We agree with this statement. The denial by the trial court of a motion to set aside a verdict on the ground that it is excessive is entitled to great weight. *Gorczyca* v. *New York, N.H. & H.R. Co.,* 141 Conn. 701, 703, 109 A.2d 589; *Adams* v. *Mohican Hotel,* 124 Conn. 400, 403, 200 A. 336. This court will not disturb the action

of the jury unless the verdict is "so large as to offend the sense of justice and compel a conclusion that the jury were influenced by partiality, prejudice or mistake." *Gorczyca* v. *New York, N.H. & H.R. Co.,* supra; *Slabinski* v. *Dix,* 138 Conn. 625, 629, 88 A.2d 115; *Briggs* v. *Becker,* 101 Conn. 62, 66, 124 A. 826. The verdict in this case, though liberal, does not fall within that category.

It serves no useful purpose to compare a verdict in one death case with those in others. No one life is like any other, and the damages for the destruction of one furnish no fixed standard for others. The question is one peculiarly within the province of the jury. Juries may differ widely in the conclusions which they reach in apparently similar cases, and, in fact, in any given case one jury might arrive at a result substantially different from that of another jury. This flexibility, though it may lead to uncertainty, is a necessary concomitant of the jury system as it operates in cases of this nature. As was said in *Lane* v. *United Electric Light & Water Co.,* 90 Conn. 35, 37, 96 A. 155, and quoted with approval in *McKirdy* v. *Cascio,* 142 Conn. 80, 84, 111 A.2d 555, "Therefore the problem of estimating damages for the loss of . . . life with any exactness is, as in every such case . . . one beset with insurmountable difficulties. The law, nevertheless, undertakes to do justice as best it can, although of necessity crudely. The solution of the problem is left to the trier's good judgment."

There is no error.

In this opinion the other judges concurred.